IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 23-00182-01-CR-W-BP |
| CHARLES S. BROWN, | ) ) ) |
| Defendant. | ) ) |

### ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, AND GRANTING MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

On March 22, 2023, Officer Harold Echols initiated an encounter with Defendant Charles Brown at a gas station. Officer Echols eventually handcuffed Defendant and discovered a baggie that appeared to contain drugs in his pocket. Defendant was arrested, and his truck was towed. When conducting an inventory search of the vehicle, a firearm was seized. Defendant also made incriminating statements to law enforcement after his arrest.

Defendant has been indicted for being a felon in possession of a firearm. (Doc. 1.) On December 4, 2023, he filed a Motion to Suppress Evidence and Statements, arguing Officer Echols violated the Fourth Amendment in various respects during the encounter. The Honorable W. Brian Gaddy, United States Magistrate Judge for this District, held a hearing on February 12, 2024, (Doc. 31), and subsequently issued a Report and Recommendation (the "Report"), suggesting Defendant's Motion be granted, (Doc. 33.) The Government objects to the Report. (Doc. 39.)

The Court has conducted a de novo review as required by 28 U.S.C. § 636(b)(1). In particular, the Court has reviewed the parties' pre-hearing submissions, the hearing's transcript and exhibits, and the Government's Objections. Having conducted this review, the Court **OVERRULES** the Government's Objections, **ADOPTS** the Report as its Order, and **GRANTS**

the Motion to Suppress Evidence and Statements. The following discussion is intended to augment, not supplant, the Report's recommended findings and conclusions.

## I. BACKGROUND

On March 22, 2023, at roughly 6:30 p.m., off-duty Detective Lonnie Pfieffer informed Officer Echols he had seen a white male (who was later identified as Defendant) rummaging through the back of another person's truck. Defendant was wearing a surgical mask and operating a truck that had the license plates covered with duct tape. Detective Pfeiffer did not state Defendant broke into the truck or took anything. He ultimately asked Officer Echols to help him investigate whether Defendant was involved with other break-ins in the area. Officer Echols was aware vehicle break-ins had occurred in the area. Shoplifting and property crimes were also common.

Detective Pfeiffer followed Defendant for two or three blocks to a QuikTrip, where Defendant parked at a gas pump, removed the duct tape from his license plates, and entered the gas station. Dispatch, based on the license plates, confirmed the vehicle Defendant was operating was registered to him; it also mentioned an address. Officer Echols heard the information and was familiar with suspicious activity at the address (e.g., recovery of stolen cars and items and disturbances). He, however, had not been to the address and was not familiar with Defendant.

Officer Echols arrived at the QuikTrip at 6:41 p.m. He went inside and contacted Defendant, who was near the fountain drink area and a cookie display and had a cookie in his hand. Officer Echols explained why he was making contact, and, when Defendant started to argue, he asked if Defendant had any weapons. Defendant said he did not. Despite this answer, Officer Echols frisked Defendant because he (1) had been rummaging through the back of another person's truck while his license plates were covered with duct tape and he was wearing a surgical mask and

2

(2) was associated with an address known for suspicious activities and recovery of stolen vehicles.[1] Officer Echols described rummaging through the bed of another person's truck as "car prowling," which he said is consistent with breaking into or stealing vehicles.

Defendant was cooperative during the frisk and did not protest. The frisk did not reveal any weapons, but, in the front pocket of Defendant's hoodie, Officer Echols felt a cellophane wrapper that was consistent with a cookie wrapper. At that time, Defendant stated he was going to pay for the cookie in his pocket. Officer Echols believed Defendant was shoplifting and "detained" him by placing him in handcuffs. He then escorted Defendant out of the store and asked if he had something with his name on it. Defendant referenced a credit card in his pocket. When Officer Echols retrieved the credit card, a small baggie of what appeared to be drugs was stuck to it. Officer Echols arrested Defendant for possessing a controlled substance and transported him to the police station. Defendant's vehicle was also towed, and, when law enforcement conducted an inventory search as required by policy, a firearm was seized. Finally, Defendant later admitted to law enforcement that he possessed the firearm and had been "getting high for sixteen years."[2]

## II. DISCUSSION

Defendant argues Officer Echols violated the Fourth Amendment—which, as relevant here, protects individuals from "unreasonable searches and seizures"—during the encounter, focusing largely on the frisk and use of handcuffs. The Government argues Officer Echols's

---

[1] Officer Echols also stated that he had sustained serious injuries when he had not frisked or properly detained individuals and that it was his practice to conduct frisks.

[2] These statements were not discussed at the hearing, but they are referenced in Defendant's Motion. (Doc. 21, pp. 2-3.)

3

Case 4:23-cr-00182-BP   Document 41   Filed 04/18/24   Page 3 of 7

actions were not unlawful. In the Report, Judge Gaddy recommended the Court hold Officer Echols unconstitutionally frisked and handcuffed Defendant.

The Court agrees with Judge Gaddy's recommendations on both issues but will focus on the use of handcuffs here. It, however, notes the Government's Objections only specifically discuss the recommendation that the Court find Officer Echols was not permitted to frisk Defendant, citing two cases in which the Eighth Circuit determined a frisk was lawful because the officer reasonably believed the individual was armed and dangerous. *United States v. Davison*, 808 F.3d 325 (8th Cir. 2015); *United States v. Roggeman*, 279 F.3d 573 (8th Cir. 2002). These cases are factually distinguishable. In *Davison*, (1) the defendant matched the description of someone who was seen inside a stolen truck, (2) the Eighth Circuit referenced precedent that officers may reasonably believe car thieves could have weapons, and (3) the stop occurred after the officer saw the defendant "walk through the yard of a known drug house in a high-crime area where recent shootings had occurred, including one that targeted police officers." 808 F.3d at 327-28, 330. In *Roggeman*, (1) the officer was alone, (2) the defendant was stopped late at night, (3) the scene was poorly lit, and (4) the officer observed a bulge in the defendant's right-front pocket, which caused concern that he might be armed. 279 F.3d at 578-84. Here, the connection to car theft was less pronounced; Defendant was rummaging through another person's truck and was associated with an address where stolen vehicles had been recovered, but he had not attempted to break into a car, the truck he was driving was registered to him, and he was not personally linked to prior car thefts. Moreover, (1) the encounter occurred in a gas station at approximately 6:45 p.m., (2) there is no evidence of prior shootings or violent incidents in the area, and (3) Officer Echols did not see anything that suggested Defendant was armed and dangerous. *Davison* and *Roggeman* do not support a conclusion that Officer Echol's frisk of Defendant was constitutional.

4

Case 4:23-cr-00182-BP   Document 41   Filed 04/18/24   Page 4 of 7

With respect to the use of handcuffs, the Government argues Officer Echols had probable cause to believe Defendant was stealing a cookie and thus could arrest him.[3] "Under the Fourth Amendment, warrantless arrests must be supported by probable cause." *Walz v. Randall*, 2 F.4th 1091, 1100 (8th Cir. 2021). "Probable cause exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Brown v. City of St. Louis, Missouri*, 40 F.4th 895, 900 (8th Cir. 2022) (quotations omitted). "To determine whether an officer had probable cause for an arrest, [the Court] examine[s] the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *D.C. v. Wesby*, 583 U.S. 48, 56-57 (2018) (quotations omitted).

The Court finds Officer Echols did not have probable cause to believe Defendant was stealing. While Defendant was eating a cookie and had another cookie in his pocket, he was still inside the store and continuing to shop. Defendant's behavior was not necessarily atypical or indicative of stealing. Defendant had not yet removed the items from the store without attempting to pay, and he assured Officer Echols he intended to pay for his items. In these circumstances, a determination that Defendant was stealing was premature, and Officer Echols did not have probable cause to believe he was doing so.[4]

---

[3] The Court notes that, when asked why he placed Defendant in handcuffs, Officer Echols did not state he was arresting him for stealing.

[4] The Court notes that, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Further, the officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *see also United States v. Demilia*, 771 F.3d 1051, 1054 (8th Cir. 2014) ("Applying *Devenpeck* in [a prior case], we held that a state trooper has probable cause to make a traffic stop even if he does not cite to the proper statute or use the precise language of the relevant statute at the time he makes the stop.") Judge Gaddy's Report states Defendant may have committed a crime by (1) rummaging through the bed of another person's truck, *see* Mo. Rev. Stat. § 569.090.1, or (2) covering his license plate with duct tape, *see* Mo. Rev. Stat. § 301.130.5. The Government has not contended Officer Echols was permitted to arrest Defendant based on these offenses. Because the argument has not been raised, the Court declines to discuss it further.

Absent probable cause to arrest, "[o]fficers may use handcuffs during a *Terry* stop if they have some reasonable belief that the suspect is armed and dangerous or that the restraints are necessary for some other legitimate purpose, evaluated on the facts of each case." *United States v. Bonilla*, 86 F.4th 1196, 1199 (8th Cir. 2023) (quotation omitted). Officer Echols testified he used the handcuffs for officer safety; he also suggested he wished to prevent Defendant from leaving and used the handcuffs while waiting for backup. However, Officer Echols had frisked Defendant and knew he did not have any weapons. And, while Officer Echols testified Defendant argued when the stop was initiated, he also stated Defendant was cooperative during the frisk. Further, no evidence suggests that Defendant seemed violent or had attempted flee. These facts do not give rise to a reasonable belief that Defendant was armed and dangerous. Officer Echols, given the lack of probable cause, also had no legal basis to detain Defendant while waiting for backup and, even if he did, the facts do not establish handcuffs were necessary. For these reasons, the Court holds Officer Echols violated the Fourth Amendment by placing Defendant in handcuffs.

Defendant next argues that, because aspects of the encounter violated the Fourth Amendment, evidence obtained afterwards (i.e., the drugs retrieved from Defendant's person, the firearm found in his truck, and the incriminating statements Defendant made to law enforcement) are "fruit of the poisonous tree." Judge Gaddy agreed and recommended suppressing the evidence and statements. The Court adopts this recommendation.

The exclusionary rule applies to subsequently obtained evidence that is derived from a constitutional violation; "[t]he illegality must be at least a but-for cause of obtaining the evidence." *United States v. Tuton*, 893 F.3d 562, 568 (8th Cir. 2018) (quotation omitted). "If the defendant establishes a nexus between a constitutional violation and the discovery of evidence sought to be excluded, the government must show the challenged evidence did not arise by exploitation of that

illegality but instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* (cleaned up). Here, Officer Echols reached into Defendant's pocket and found the drugs only because Defendant was handcuffed. Defendant was then arrested and taken to the station; there, he made incriminating statements while being interrogated. His truck was also towed and searched, leading to seizure of the firearm. Thus, Defendant has shown a nexus between the unconstitutional use of handcuffs and the challenged evidence, and the burden shifts to the Government to demonstrate the means of obtaining the evidence were sufficiently distinct from the constitutional violation. The Government, however, does not discuss this issue (for instance, it does not argue the evidence would have inevitably been discovered by lawful means); instead, it contends only that Officer Echols actions were constitutional. Absent argument from the Government, the Court applies the exclusionary rule to the drugs, firearm, and Defendant's incriminating statements.

### III. CONCLUSION

The Court **OVERRULES** the Government's Objections, (Doc. 39); **ADOPTS** the Report, (Doc. 33), in its entirety as augmented by the above discussion; and **GRANTS** Defendant's Motion to Suppress Evidence and Statements, (Doc. 21.)

**IT IS SO ORDERED.**

DATE: April 18, 2024

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT